# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

* * *

Yi Li,

                    Plaintiff,

        v.

Amazon.com, Inc.; Amazon.com Services
LLC; et al.,

                    Defendants.

Case No. 2:25-cv-01381-RFB-DJA

**Order**

Under 28 U.S.C. § 1915 Plaintiff is proceeding in this action *pro se* and *forma pauperis* (meaning, without paying the filing fee). Plaintiff has filed a third amended complaint (ECF No. 28), which the Court screens under § 1915. Because the Court finds that Plaintiff has not shown that he has exhausted his administrative remedies with respect to his federal claims and certain of his state claims, and because the Court lacks subject matter and supplemental jurisdiction over Plaintiff's remaining state claims, the Court dismisses Plaintiff's complaint without prejudice and with leave to amend.

## I.      Legal standard for screening.

As Plaintiff has been granted leave to proceed *in forma pauperis*, this Court will therefore screen the complaint under § 1915(e). Federal courts are given the authority to dismiss a case if the action is legally "frivolous or malicious," fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). When a court dismisses a complaint under § 1915, the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint for failure to state a claim upon which relief can be granted.  Review under Rule 12(b)(6) is essentially a ruling on a question of law.  *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000).  A properly pled complaint must provide a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Although Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  The court must accept as true all well-pled factual allegations contained in the complaint, but the same requirement does not apply to legal conclusions.  *Iqbal*, 556 U.S. at 679.  Mere recitals of the elements of a cause of action, supported only by conclusory allegations, do not suffice.  *Id.* at 678.  Where the claims in the complaint have not crossed the line from conceivable to plausible, the complaint should be dismissed.  *Twombly*, 550 U.S. at 570. Allegations of a pro se complaint are held to less stringent standards than formal pleadings drafted by lawyers.  *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (finding that liberal construction of pro se pleadings is required after *Twombly* and *Iqbal*).

Federal courts are courts of limited jurisdiction and possess only that power authorized by the Constitution and statute.  *See Rasul v. Bush*, 542 U.S. 466, 489 (2004).  Under 28 U.S.C. § 1331, federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  Cases "arise under" federal law either when federal law creates the cause of action or where the vindication of a right under state law necessarily turns on the construction of federal law.  *Republican Party of Guam v. Gutierrez*, 277 F.3d 1086, 1088-89 (9th Cir. 2002).  Whether federal-question jurisdiction exists is based on the "well-pleaded complaint rule," which provides that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).  Under 28 U.S.C. § 1332(a), federal district courts have original jurisdiction over civil actions in diversity cases "where the matter in controversy exceeds the sum or value of $75,000" and where the matter is between "citizens of

different states." Generally speaking, diversity jurisdiction exists only where there is "complete diversity" among the parties; each of the plaintiffs must be a citizen of a different state than each of the defendants. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

## II.      Screening the complaint.

Plaintiff sues Amazon.com, Inc.; Amazon.com Services LLC; and various Amazon employees including Joy Willis, a central human resources ("HR") investigator; Nick B., a manager at the Amazon Nevada facility; Kyra Carpenter, a manager at the Amazon Nevada facility; Jasmine, a loss prevention staff member; Jane Doe 1, an employee; Jane Doe 2, a safety supervisor; and Jane Doe 3, an employee. Plaintiff brings claims for race/color discrimination under Title VII of the Civil Rights Act of 1964 and under Nevada Revised Statute ("NRS") 613.330; retaliation under Title VII and NRS 613.340; "failure to prevent discrimination and harassment" which the Court liberally construes as a discrimination claim arising under both Title VII and NRS 613.330; "constructive discharge/wrongful termination" which the Court liberally construes as a discrimination claim arising under Title VII and NRS 613.330; assault; battery; defamation; intentional infliction of emotional distress; and negligent supervision and retention.

Plaintiff alleges that he was employed by Defendants (presumably Amazon.com, Inc. and Amazon.com Services LLC) from December 2023 through April 3, 2025. Plaintiff describes himself as a "light complected employee" and asserts that he was "of a distinctly different racial background and lighter skin complexion" than the Defendants and that "[n]early all of the individuals involved…were of the same racial and ethnic background as one another."

In April of 2024, Plaintiff alleges that due to a supervisor's oversight, he was mistakenly assigned to another employee's workstation. The employee—Jane Doe 1—yelled profanities at Plaintiff and blocked his movement for about fifteen seconds. Plaintiff asked nearby coworkers to notify security, but nobody intervened. Plaintiff asserts that management took no action, which Plaintiff asserts reveals "preferential treatment and lack of accountability for certain employees, creating an early perception of bias against Plaintiff."

In September of 2024, after Plaintiff learned that on-site supervisors were ignoring employees cheating on quotas, Plaintiff observed and reported the cheating through Amazon's

independent third-party ethics hotline.  Shortly after, Jane Doe 2, a safety supervisor, confronted Plaintiff and became defensive when Plaintiff mentioned quota cheating.  Plaintiff asserts that Jane Doe 2 raised her voice while falsely accusing Plaintiff of yelling.  Within a few days, Plaintiff received a disciplinary notice and behavioral write up, which Plaintiff claims was in retaliation for his reporting quota cheating.  That notice falsely accused Plaintiff of yelling and being disruptive.  The write up was issued and signed by Joy Willis, an Amazon central HR investigator.  Plaintiff asserts that the write up incorporated Jane Doe 2's false narrative and disregarded Plaintiff's version of events.

On December 7, 2024, Plaintiff claims that Jane Doe 3 chased him down a corridor and struck him on the upper back.  Plaintiff fled and promptly sought help from two managers.  The first, Kyra Carpenter, who had been Plaintiff's direct manager for a brief period earlier that year, looked up at Plaintiff from her laptop as he approached her in visible distress, but looked away and back down at her laptop without saying a word.  So, Plaintiff sought out Nick B., another manager, to report the attack.  Jasmine, a loss prevention employee, later stated that she would review the security footage, but then "issued a false statement" that Plaintiff had "turned around and pointed a finger at her face" (presumably Jane Doe 3's face) while he fled.  Plaintiff asserts that he never pointed a finger, but "simply raised an open hand while identifying the batterer during his report of the assault."  Plaintiff claims that Jasmine, Carpenter, and Nick B. "falsely corroborated each other's accounts to portray Plaintiff as the aggressor."  Willis issued a second behavioral write up against Plaintiff, which write up included the falsehood that Plaintiff was the aggressor.  Plaintiff asserts that Amazon failed to take corrective action, ignored exculpatory video evidence, and used the falsified reports to "justify continued retaliation."  Plaintiff asserts that Carpenter's conduct also "reflects retaliatory motive and racial bias" because Plaintiff had previously reported Carpenter for failing to follow policy.

After the December 2024 incident, Plaintiff repeatedly requested transfers to other departments.  His requests were denied.  Plaintiff states that he was forced to resign on April 3, 2025, due to intolerable working conditions.  Plaintiff claims that after his resignation, Amazon continued its retaliation against him by submitting false statements to the Nevada Department of

Employment, Training, and Rehabilitation ("DETR"), falsely accusing Plaintiff of property damage and aggressive conduct.  Plaintiff claims that these defamatory statements were on DETR's portal (it is unclear if they were published or public) and damaged his reputation and employment prospects.

### A.    Plaintiff's claims arising under Title VII, NRS 613.330, and NRS 613.340.

Plaintiff brings claims for race/color discrimination, retaliation, "failure to prevent discrimination and harassment," and "constructive discharge/wrongful termination" that arise under Title VII, NRS 613.330, and NRS 613.340 due to Plaintiff's claims that Defendants' actions were racially motivated.  *See* 42 U.S.C. § 2000e-2(a)(1) (explaining that it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin"); *see* Nev. Rev. Stat. 613.330(1) (explaining that it is unlawful for an employer to "discriminate against any person with respect to the person's compensation, terms, conditions or privileges of employment, because of his or her race, color, religion, sex, sexual orientation, gender identity or expression, age, disability or national origin"); *see* 42 U.S.C. § 2000e-3(a) (explaining that it is unlawful for an employer to discriminate against an employee because the employee "has opposed any practice made an unlawful employment practice by this subchapter"); *see* Nev. Rev. Stat. 613.340(1) (explaining that it is unlawful for an employer to discriminate against an employee because the employee has "opposed any practice made an unlawful employment practice by NRS 613.133 or 613.310 to 613.4383, inclusive"); *see Lawson v. Washington*, 296 F.3d 799, 805 (9th Cir. 2002) (explaining that, for the purposes of Title VII, a "constructive discharge occurs when a person quits his job under circumstances in which a reasonable person would feel that the conditions of employment have become intolerable"); *see Ozawa v. Vision Airlines, Inc.*, 216 P.3d 788, 791 (Nev. 2009) (declining to recognize a claim for tortious discharge where an adequate statutory remedy, such as NRS Chapter 613, already exists). However, both Plaintiff's claims arising under Title VII and those arising under NRS Chapter 613 require Plaintiff to exhaust his administrative remedies first.

Before filing employment discrimination claims in federal court pursuant to Title VII, plaintiffs must exhaust their administrative remedies by filing a charge of discrimination. 42 U.S.C. § 2000e-5 (Title VII); *see also Munoz v. Mabus*, 630 F.3d 856, 861 (9th Cir. 2010) ("Title VII and the EEOC's implementing regulations set forth specific administrative procedures that a complainant must first exhaust before gaining access to the federal courts on a discrimination complaint."). Title VII directs that a "charge ... shall be filed" with the Equal Employment Opportunity Commission "by or on behalf of a person claiming to be aggrieved" within 180 days "after the alleged unlawful employment practice occur[s]." 42 U.S.C. § 2000e–5(b), (e)(1); *Fort Bend County, Texas v. Davis*, 587 U.S. 541, 544-45 (2019). For complaints concerning a practice occurring in a State or political subdivision that has a fair employment agency of its own empowered "to grant or seek relief,"—in Nevada, the Nevada Equal Rights Commission ("NERC")—Title VII instructs the complainant to file her charge first with the state or local agency. § 2000e–5(c); *see* 29 C.F.R. § 1601.74(a). The complainant then has 300 days following the challenged practice, or 30 days after receiving notice that state or local proceedings have ended, "whichever is earlier," to file a charge with the EEOC. § 2000e–5(e)(1). If the state or local agency has a "worksharing" agreement with the EEOC, a complainant ordinarily need not file separately with federal and state agencies. He may file his charge with one agency, and that agency will then relay the charge to the other. *See* 29 CFR § 1601.13 (2018).

Upon receiving a charge, the EEOC notifies the employer and investigates the allegations. 42 U.S.C. § 2000e–5(b). If the Commission finds "reasonable cause" to believe the charge is true, the Act instructs the Commission to "endeavor to eliminate [the] alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." *Ibid.* When informal methods do not resolve the charge, the EEOC has first option to "bring a civil action" against the employer in court. § 2000e–5(f)(1).

In the event that the EEOC determines there is "n[o] reasonable cause to believe that the charge is true," the Commission is to dismiss the charge and notify the complainant of his or her right to sue in court. 42 U.S.C. § 2000e–5(b), f(1); 29 CFR § 1601.28. Whether or not the EEOC acts on the charge, a complainant is entitled to a "right-to-sue" notice 180 days after the charge is

filed.  § 2000e–5(f)(1); 29 CFR § 1601.28.  And within 90 days following such notice, the complainant may commence a civil action against the allegedly offending employer.  § 2000e–5(f)(1).

Under Nevada law, a person claiming discrimination under NRS 613.330 or NRS 613.340 may file a complaint with the NERC.  *See* Nev. Rev. Stat. 613.405(1).  Under NRS 613.420(1), if NERC "does not conclude that an unfair employment practice within the scope of NRS 613.310 to 613.4383, inclusive, has occurred, the Commission shall issue," amongst other things, a right-to-sue notice "indicat[ing] that the person may, not later than 90 days after the date of receipt of the right-to-sue notice, bring a civil action in district court against the person named in the complaint."   However, no action authorized by NRS 613.420 may be brought more than 180 days after the date of the act complained of.  Nev. Rev. Stat. 613.430(a).  The Nevada Supreme Court has held that "the legislature intended that claims involving employment discrimination were to be administratively exhausted prior to seeking redress in the district courts."  *Palmer v. State*, 787 P.2d 803, 804 (Nev. 1990).  The Nevada Supreme Court has also held that "an employee who brings…claims [unrelated to discrimination claims already pursued before the NERC] in the district court without first presenting them to NERC has failed to exhaust her administrative remedies."  *Pope v. Motel 6*, 114 P.3d 277, 280 (Nev. 2005); *see Gonzales v. Harrah's Operating Co.*, No. 3:13-CV-230-RCJ-WGC, 2013 WL 6284172, at *6 (D. Nev. Dec. 4, 2013).

Here, Plaintiff has neither claimed to have received a right to sue notice from the EEOC and/or the NERC nor attached any evidence to show that he has.  So, Plaintiff has failed to show that he has exhausted his administrative remedies.  The Court therefore dismisses Plaintiff's discrimination, retaliation, failure to prevent discrimination and retaliation, and constructive discharge/wrongful termination claims arising under Title VII, NRS 613.330, NRS 613.340 without prejudice and with leave to amend.

///

///

///

### B.   Subject matter jurisdiction over Plaintiff's remaining claims.

Plaintiff's remaining claims for assault,[1] battery,[2] defamation,[3] intentional infliction of emotional distress,[4] and negligent supervision and retention,[5] all arise under Nevada law. However, as outlined above, the Court has dismissed Plaintiff's federal Title VII claims. So, it lacks federal question jurisdiction, and therefore supplemental jurisdiction, over Plaintiff's remaining claims. *See* 28 U.S.C. § 1331; *see* 28 U.S.C. § 1367(a). Plaintiff does not invoke the Court's diversity jurisdiction and, even if he did, it is unclear if the Court has diversity jurisdiction over his claims. 28 U.S.C. § 1332. So, the Court dismisses Plaintiff's state law claims without prejudice as well.

---

[1] To establish a claim for assault under Nevada law, a plaintiff must show that the defendant (1) intended to cause harmful or offensive physical contact, and (2) the victim was put in apprehension of such contact. Restatement (Second) of Torts, § 21 (1965); *Burns v. Mayer*, 175 F.Supp.2d 1259, 1269 (D. Nev. 2001).

[2] To establish a battery claim under Nevada law, a plaintiff must show that the defendant (1) intended to cause harmful or offensive contact, and (2) such contact did occur. Restatement (Second) of Torts, §§ 13, 18 (1965); *Burns v. Mayer*, 175 F.Supp.2d 1259, 1269 (D. Nev. 2001).

[3] Defamation encompasses both slander (spoken) and libel (written) defamatory statements. *Flowers v. Carville*, 292 F.Supp.2d 1225, 1232 n.1 (D. Nev. 2003). To state a claim for defamation, Plaintiff must allege the following elements: "(1) a false and defamatory statement by [a] defendant concerning the plaintiff; (2) an unprivileged publication a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Rosen v. Tarkanian*, 453 P.3d 1220, 1225 (Nev. 2019); *see also* Nev. Rev. Stat. 200.510(1) (defining libel).

[4] To state a claim for intentional infliction of emotional distress under Nevada law, a plaintiff must allege "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress, and (3) actual or proximate causation." *Welder v. Univ. of S. Nevada*, 833 F.Supp.2d 1240, 1245 (D. Nev. 2011) (quoting *Dillard Dep't Stores, Inc. v. Beckwith*, 989 P.2d 882, 886 (Nev. 1999)).

[5] "To establish a claim for negligent hiring, training, retention, or supervision of employees, a plaintiff must show (1) a duty of care defendant owed the plaintiff; (2) breach of 'that duty by hiring, training, retaining, and/or supervising an employee even though defendant knew, or should have known, of the employee's dangerous propensities; (3) the breach was the cause of plaintiff's injuries; and (4) damages.'" *Freeman Expositions, LLC v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 520 P.3d 803, 811 (Nev. 2022) (quoting *Peterson v. Miranda*, 57 F. Supp.3d 1271, 1280 (D. Nev. 2014)).

**IT IS THEREFORE ORDERED** that Plaintiff's third amended complaint (ECF No. 28) is **dismissed without prejudice** for failure to state a claim upon which relief can be granted, with leave to amend. Plaintiff will have until **June 8, 2026,** to file an amended complaint if the noted deficiencies can be corrected. If Plaintiff chooses to amend the complaint, Plaintiff is informed that the Court cannot refer to a prior pleading (i.e., the original complaint) to make the amended complaint complete. This is because, generally, an amended complaint supersedes the original complaint. Local Rule 15-1(a) requires that an amended complaint be complete without reference to any prior pleading. Once a plaintiff files an amended complaint, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each Defendant must be sufficiently alleged. **Failure to comply with this order will result in the recommended dismissal of this case.**

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to send Plaintiff a copy of this order.

DATED: May 7, 2026,

_____

DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE